<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NICOLE R.,<br><br>                    *Plaintiff,*<br><br>                    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    *Defendant.* | Civil Action No. 21-10775 (KMW) |

Appearances:

Richard Lowell Frankel, Esq.
        Counsel for Plaintiff Nicole R.

Dina White Griffin, Esq.
Social Security Administration – Office of General Counsel
        Counsel for Defendant Commissioner of Social Security

**WILLIAMS**, District Judge

<u>**OPINION**</u>

**I.     INTRODUCTION**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of the Social Security Administration ("Commission") denying the application of Nicole ("Plaintiff")[1] for Social Security Disability Benefits under Title XVI of the Social Security Act ("the "Decision"). 42 U.S.C. § 401, *et seq.*  Plaintiff, who suffers from multiple physical and mental impairments,

---

[1] Plaintiff is identified only by his first name and last initial, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

seeks benefits for the period of disability and disability insurance benefits, alleging disability beginning on August 2, 2018[2].  In the pending appeal, Plaintiff argues: (1) the ALJ erred by failing to evaluate Plaintiff's wrist braces when preparing the residual functional capacity; (2) the ALJ erred by giving little to no weight to certain medical opinions; and (3) the ALJ failed to ask the vocational expert questions to sufficiently reflect Plaintiff's mental impairments and further failed to incorporate more significant limitations related to the same .  For the reasons stated below, this matter will be **AFFIRMED**.

## II.  PROCEDURAL & FACTUAL HISTORY

### A.  Procedural History

Plaintiff filed an application for supplemental security income ("SSI") on August 2, 2018, alleging a disability onset date of October 1, 2011.  A.R. 10.  Plaintiff later amended the disability onset date to August 2, 2018.  A.R. 10.  The claim was initially denied on April 8, 2019, and upon reconsideration was similarly denied on July 25, 2019.  A.R. 10.  On July 10, 2020, an ALJ held a telephonic administrative hearing (the "Hearing").  A.R. 10.  On August 3, 2020, the ALJ determined that Plaintiff was not disabled.  A.R. 19.  Thereafter, on March 1, 2021, the Appeals Council denied Plaintiff's request for review.  A.R. 1.  The parties timely completed briefing with respect to this matter.  ECF Nos. 8, 12, 13.

### B.  Factual History

Plaintiff is 51 years old[3] and has a limited education, with her highest level of education being the 10th grade.  A.R. 17; Pltf.'s Br., ECF No. 8 at 2.  Prior to the onset of her impairments,

---

[2] Plaintiff originally alleged an onset date of disability of October 1, 2011, but at the Hearing amended her onset date of disability to August 2, 2018.  Pltf.'s Br., at 1 (citing A.R. 10, 43).\

[3] During the Hearing, the ALJ noted that because Plaintiff's birthday was the next day and therefore the change in age category from younger individual to closely approaching advanced age took effect that day.  A.R. 42.

the ALJ decision indicates that Plaintiff had no previous work experience.  A.R. 17.  Plaintiff has a history of physical conditions that have been affecting her back, hip, hands and wrists, as well as mental conditions including depression and posttraumatic stress disorder ("PTSD").  A.R. 12. According to the ALJ decision, Plaintiff has the following severe impairments: degenerative disc disease; carpal tunnel syndrome; degenerative joint disease in the left hip; radiculopathy; ulnar neuropathy; obesity; major depressive disorder; and PTSD.  A.R. 12.  Notably, Plaintiff reports that in 2005, she was in a motor vehicle accident and suffered a back injury; however, she did not seek treatment for said injury at that time.  Pltf.'s Br., at 6.

### i.   Plaintiff's Physical Impairments

Plaintiff is treated by Dr. Kaniz Khan-Jaffery who has served as her primary neurologist and pain management doctor since January 2017.  Pltf.'s Br., at 6.  Dr. Khan-Jaffery orders a number of EMG tests.  Based on the EMG results, Dr. Khan-Jaffery diagnoses Plaintiff with L5 radiculopathy and symptoms of bilateral carpal tunnel.  Pltf.'s Br., at 6; A.R. 348, 356.  Plaintiff begins to receive treatment for her lower back pain and receives hip injections on June 12, 2018. A.R. 313-314.  On June 21, 2018, Dr. Khan-Jaffery diagnoses Plaintiff with chronic pain, lumbar disc degeneration, and severe herniation at C-7 and begins treatment with cortisone shots and NSAIDS.  Pltf.'s Br., at 7; A.R. 305.

Plaintiff also sees Dr. Juan Carlos Cornejo for a consultative exam and had x-rays done as part of that exam.  On March 22, 2019, the x-rays of Plaintiff's lumbar spine showed that she had severe disk space narrowing, facet hypertrophy, and spondylosis at L5-S1.  Pltf.'s Br., at 8; A.R. 416.  Moreover, x-rays of Plaintiff's hands showed that she had bilateral joint space narrowing in both hands, which is generally known as osteoarthrosis.  Pltf.'s Br., at 8; A.R. 416.

Plaintiff was also treated by medical professionals at Reliance Medical Group, and on

January 22, 2020, during a routine exam, Plaintiff was "prescribed" a set of wrist braces to assist her in mitigating her hand conditions with a note that patient requests such braces.  Pltf.'s Br., at 9; A.R. 534.  Subsequent treatment notes indicate that Plaintiff's carpal tunnel was more stable with these wrist braces, including treatment records from April 9, 2020, indicating that that the braces were effective at stabilizing her carpal tunnel.  Pltf.'s Br., at 9; A.R. 536, 546, 549.

## ii. Plaintiff's Mental Impairments

In addition to the physical conditions discussed above, the record and ALJ decision indicate Plaintiff suffers from mental impairments.  On December 11, 2018, Plaintiff presented to Dr. Barbara Kelly for a consultative medical exam.  Pltf.'s Br., at 7; A.R. 368.  During that exam, Dr. Kelly diagnosed Plaintiff with major depressive disorder, single episode, and moderate and posttraumatic stress disorder, and found that the Plaintiff would require oversight in the management of her funds due to cognitive impairment.  Pltf.'s Br., at 7; A.R. 370.  According to the records, this cognitive impairment was demonstrated by Plaintiff's difficulty in completing multiple cognitive tests that Dr. Kelly conducted, and moreover, Dr. Kelly noted that during the exam, Plaintiff was slow with all cognitive tasks.  Pltf.'s Br., at 7; A.R. 369-370.

Plaintiff's mental conditions were also treated by Angela Davis, APN.  On July 3, 2019, Plaintiff saw Ms. Davis for a psychological exam, where Plaintiff discussed her chronic pain issues and Ms. Davis noted that Plaintiff was diagnosed with severe major depressive disorder, single episode without psychotic features, and commented that Plaintiff displayed sadness, difficulty concentrating, and poor sleep.  Pltf.'s Br., at 8; A.R. 576.  During this visit, Ms. Davis also noted Plaintiff's diagnosis of PTSD, and commented that Plaintiff manifested symptoms of startled responses, nightmares, and flashbacks.  Pltf.'s Br., at 8; A.R. 576-577.  Similar notes are repeated in follow up appointments on August 14, 2019 and September 25, 2019.  Pltf.'s Br., at 8; A.R.580,

586-587, 590, 569-597.  During a visit on January 23, 2020, Ms. Davis noted a new diagnosis of major depressive disorder, recurrent episode, and commented again that Plaintiff displayed depressed mood, difficulty concentrating, poor sleep, anhedonia, and feeling poorly of herself. Pltf.'s Br., at 8; A.R. 606.  These comments are repeated in visits from April 40, 2020 and June 1, 2020.  Pltf.'s Br., 8; A.R. 616-617, 626-627.  Finally, on June 11, 2020, Ms. Davis completed a mental impairment medical source statement in connection with Plaintiff's claim for disability. During that exam, Ms. Davis noted that Plaintiff's medication side effects would limit her work duties by causing difficulty concentrating and focusing that could cause disruptions of at least 34% of her day.  Pltf.'s Br., at 8-9; A.R. 630.  Ms. Davis also made the following observations during the exam: Plaintiff is credible in self-reporting; Plaintiff is seriously limited and unsatisfactory at performing work like tasks, such as maintaining socially appropriate behavior and traveling to unfamiliar places; and Plaintiff had marked "difficulties in understanding, remembering, or applying information," as well as marked "deficiencies of concentration, persistence, or pace." Pltf.'s Br., at 9; A.R. 631-633.

### C.  Hearing Testimony

At the Hearing on July 10, 2020, Plaintiff was represented by counsel and testified before the ALJ.  Plaintiff began by describing her carpal tunnel in her hands and her limitations related thereto.  Specifically, Plaintiff described that she is unable "to do big things" and explained that she might be able to do the dishes, but cannot do it for a long period because her hands cramp up very badly.  A.R. 45.  She also testified that she cannot hold things in her hands for a long period of time, stating that she has trouble with anything she has to "grip" specifically noting that sometimes her "forks and spoons will fall out of [her] hands as [she's] eating."  A.R. 45-46. Plaintiff indicated that her problems holding items occur often, stating it happens about four times

in any given week.  A.R. 46.  Plaintiff reported that when her hands cramp up, they hurt for a long period of time and take approximately five to six hours to stop hurting.  A.R. 45.  Plaintiff also testified that she wears wrist braces on both hands, which she began wearing in 2019.  A.R. 46. She reported that the wrist braces have been helping with her hand problems indicating they make her hands "feel a lot better."  A.R. 53.  Notably, Plaintiff explained that she has not had any surgeries on her hands to address her carpal tunnel and that her doctors have not discussed this possibility and have only given her the wrist braces for now.  A.R. 52-53.  Plaintiff also described pain in her lower back that makes her unable to "walk for long periods of time."  A.R. 47.  She testified that the pain feels like needles are sticking her and the pain will start in the morning and will continue on and off all day; she experiences really bad days when she would rate the pain at an eight four to five days a week, while her pain on any other given day is between a five and six. A.R. 47-49.  Plaintiff has a brace for her back that she wears when she goes out, which was prescribed around 2019, when she received the wrist braces.  A.R. 52.  Plaintiff further explains that she is not able to stand for long periods of time and can only stand for about ten minutes because her legs will start to throb and she will have problems with her right ankle.  A.R. 49-50. At the time of the Hearing, Plaintiff had not been diagnosed with any conditions related to her right ankle but indicated that she is planning on getting treatment for it soon, thinking it is arthritis. A.R. 51.  Plaintiff also noted that she had a pinched nerve going down both legs.  A.R. 51.  Plaintiff testified that she uses a cane but admits that it was never prescribed to her.  A.R. 54-55.  Turning to her mental health conditions, Plaintiff explained that she was mentally, physically, and sexually abused and that she now suffers from depression and posttraumatic stress disorder where she does not sleep well and will have nightmares.  A.R. 56-57.  Plaintiff also has anxiety and will have anxiety attacks four or five times a week that will last approximately an hour.  A.R. 57-58.  Plaintiff

testified that she has trouble concentrating and cannot concentrate long enough to read and comprehend things.  A.R. 59-60.  She explained that she has had trouble concentrating since she was in school and that she was in special education classes for math, reading, and English.  A.R. 60.  Finally, Plaintiff testified about her activities around the home, indicating that she does not do any "big cleaning" but might do the dishes, small loads of laundry, and can carry light grocery bags.  A.R. 63-64.  She also noted that "[b]etween [her] back hurting and [her] depression, [she] spend[s] a lot of time in the bed."  A.R. 64.

The ALJ also heard testimony from Alissa Smith, an impartial vocational expert ("VE"), who answered a number of questions and hypotheticals concerning a person of Plaintiff's age, education, and RFC.  A.R. 66-71.  The VE testified that, in relevant part, a hypothetical individual who can perform work at the light exertional level, except that he or she can stand and/or walk four hours in an eight hour workday; can frequently handle and finger; and can perform simple, routine and repetitive tasks, make simple decisions, and where work environment change is minimal and contact with supervisors, coworkers, and the general public is occasional, can work light jobs classified as SVP 2.  A.R. 66-67.  The VE listed three light jobs within this category, including Price Marker with 113,000 jobs nationally, Routing Clerk with 18,000 jobs nationally, and Small Parts Assembler with 364,000 jobs nationally.  A.R. 67.  The VE noted that these jobs would be completely eliminated if the hypothetical individual could only occasionally handle or finger, and thus all light work would be eliminated.  A.R. 68.  The VE further testified that "if due to impairment related symptoms, the hypothetical individual was limited to work at the sedentary exertional level," that there would be jobs available within the national economy, classified as sedentary and SVP 2.  A.R. 67-68.  The VE described three jobs within this category, including Document Specialist with 11,000 jobs nationally, Addresser with 9,000 jobs nationally, and Nut

Sorter with 3,500 jobs nationally.  A.R. 68.  The VE also explained that these jobs would be completely eliminated if the hypothetical individual could only occasionally handle or finger and there would not be any sedentary occupations available.  A.R. 68-69.  Additionally, the VE testified that if a hypothetical individual was off-task 15% of the day, it would preclude all competitive work and that once an individual reaches 10% off-task, such a limitation would preclude all competitive work.  A.R. 69.  The VE also explained that an individual who, due to impairments related symptoms, has two unscheduled absences per month, would be precluded from all competitive work and expanded that "once the individual is absent more than one day per month . . . all competitive work [would be] precluded."  A.R. 69-70.

## III.    STANDARD

### A.  Standard of Review

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) providing the court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence."  42 U.S.C. § 405(g); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).  Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012).  Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, even if it would have made a different determination.  *Id.* (citing *Fargnoli*, 247 F.3d at 38).  Accordingly, the Court may not weigh the evidence or substitute its own conclusions for those of the ALJ.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d

356, 359 (3d Cir. 2011).

Crucially, the Commissioner "'must adequately explain in the record his reasons for rejecting or discrediting competent evidence.'" *Friday v. Comm'r of Soc. Sec.*, No. 1:20-CV-04504-NLH, 2021 WL 3879081, at *2 (D.N.J. Aug. 31, 2021) (quoting *Ogden v. Bowen*, 677 F. Supp. 273, 278). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must consider and weigh both medical and non-medical evidence before him. *Id.* (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981). Accordingly, the Third Circuit has made clear that access to the Commissioner's reasoning behind his decision is essential to a meaningful court review, holding that:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review, which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*also A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.  The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis.  20 C.F.R. § 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. § 416.920(a)(4).

Step One requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. § 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. § 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §

416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to the next step.

At Step Two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Section 416.909.  20 C.F.R. § 416.920(a)(4)(ii).  An impairment or a combination of impairments is *not* severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. § 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  Alternatively, an impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  If the ALJ does not find a severe impairment or combination of impairments, the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to next step.

At Step Three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. § 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in Step Four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. § 416.945.  The ALJ considers all medically determinable impairments in this analysis, not just those deemed to be severe.  20 C.F.R. § 416.945(a)(2)); SSR 96-8p.  After determining a

claimant's RFC, the ALJ at Step Four must determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. § 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f).  If, however, the claimant is unable to resume his or her past work, the disability evaluation proceeds to the next and final step.

At Step Five, the ALJ must determine whether the claimant considering his or her RFC, age, education, and work experience, is able to do any other work.  20 C.F.R. § 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at Step Five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. § 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled.  20 C.F.R. § 416.920(a)(4)(v).

## IV.  DISCUSSION

At the Administrative Hearing, the ALJ found that Plaintiff was not disabled because, after completing the five-step disability analysis, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  A.R. 18.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.  A.R. 12.  At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative disc disease; carpal tunnel syndrome; degenerative joint disease in the left hip; radiculopathy; ulnar neuropathy; obesity; major depressive disorder; and post-traumatic stress disorder (PTSD)."  A.R. 12.  At Step Three, the ALJ determined that Plaintiff did not "have an impairment or combination of impairments that meets

or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." A.R. 13.  The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 416.967(b) except that she can stand or walk for four hours in an eight-hour workday.  She can occasionally perform postural activities, except she can never climb ladders, ropes, or scaffolds and can never crawl. She can frequently handle or finger.  The claimant can tolerate frequent exposure to extreme cold or humidity, but cannot work around unprotected heights.  She can perform simple, routine, and repetitive tasks and make simple decisions.  She must work in an environment where changes are minimal." A.R. 14.  At Step Four, the ALJ noted that Plaintiff has no past relevant work experience.  A.R. 17.  Finally, at Step Five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." A.R. 18.  Therefore, the ALJ concluded that Plaintiff was not disabled since August 2, 2018, as defined in the Social Security Act.  A.R. 19.

On appeal, Plaintiff seeks review of the ALJ's decision.  Pltf.'s Br., ECF No. 8 at 1. Plaintiff raises three primary issues with the Decision for the Court's consideration on appeal. First, Plaintiff argues that the ALJ erred in failing to incorporate limitations related to Plaintiff's wrist braces within Plaintiff's RFC.  Pltf.'s Br., at 15-20.  Second, Plaintiff asserts that the ALJ erred in dismissing certain medical opinions.  Pltf.'s Br., at 20-27.  Third, Plaintiff claims that the ALJ erred in failing to incorporate more significant mental limitations in the hypotheticals posed to the vocational expert ("VE") during the Hearing.  Pltf.'s Br., at 27-31.  The Court will address each of these arguments.

### A.  Plaintiff's Wrist Braces

Plaintiff first asserts that the ALJ erred by failing to incorporate limitations related to her

wrist braces in Plaintiff's RFC.  While the ALJ found that Plaintiff suffered from a number of severe impairments, including carpal tunnel, Plaintiff argues that the ALJ failed to incorporate Plaintiff's allegedly medically necessary wrist braces in the RFC.  Pltf.'s Br., at 15.  As previously noted, the ALJ found that in relevant part, Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can stand or walk for four hours in an eight-hour workday.  She can occasionally perform postural activities, except she can never climb ladders, ropes, or scaffolds and can never crawl . . . [and] **can frequently handle or finger**."  A.R. 14 (emphasis added).

When preparing the RFC, the ALJ "need only include . . . those limitations which he finds credible."  *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007).  "A claimant's RFC should adequately reflect his or her 'credibly established limitations,' especially when later used as the basis for a vocational expert hypothetical."  *Sudler v. Commissioner of Social Security*, 827 Fed.Appx. 241, 245 (3d Cir. 2020) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)).  Accordingly, in establishing a claimant's RFC, the ALJ must determine which of a claimant's alleged limitations are credible, and when an ALJ finds that some alleged limitations are less than credible, he or she may properly exclude such limitations from the RFC.  *See Salles*, 229 Fed.Appx. at 147.  "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."  *Id.* at 148 (citations omitted).

Additionally, courts grant "great deference" to credibility determinations, and "'[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal.'"  *Richardson v. Comm'r of Soc. Sec.*, No. CV 16-8279 (KM), 2017 WL 6550482, at *8 (D.N.J. Dec. 22, 2017) (quoting *Hoyman v. Colvin*, 606 Fed.Appx. 678, 681 (3d Cir. 2015)).  An ALJ is entitled to question a claimant's self-report symptoms and examine whether the claimant's "'statements

concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 204 (3d Cir. 2019) (citation omitted). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state her reasons for accepting or discounting it, and make "specific findings." *Richardson*, 2017 WL 6550482, at *8 (citing *Rowan v. Barnhart*, 67 Fed.Appx. 725, 729 (3d Cir. 2003)). "Where this has been done, a reviewing court will defer to the ALJ's credibility determination." *Id.* at *8.

Moreover, "[t]he ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four." *Ortiz v. Colvin*, 227 F. Supp. 3d 350, 359 (D.N.J. 2017) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546); *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). All "relevant evidence" includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Ortiz v. Colvin*, 227 F. Supp. 3d at 359 (citing 20 C.F.R. § 404.1545(a)). Additionally, an ALJ's determination of an RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Accordingly, an ALJ must not only discuss the evidence that he or she considered that supports the decision, but must also address the evidence that he or she rejected. *Id.* at 705.

Here, the ALJ found that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 15.

The ALJ continued that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent "because in terms of the claimant's alleged impairments, the longitudinal treatment record does not align with the allegations." The ALJ further noted that "the objective medical evidence is consistent with a restriction to a range of light and unskilled work consistent with the above residual functional capacity," observing that while Plaintiff suffered from a number of physical impairments, the records showed that Plaintiff's pain was relieved by medication at times, and that there was at times full range of motion in her neck. A.R. 15 (citing Exhibit 1F/2). The ALJ cites a number of medical records in finding that Plaintiff remains capable of performing a range of light work consistent with the stated RFC, and specifically that "despite nerve conduction studies showing L5 radiculopathy and signs of carpal tunnel syndrome, the claimant did not show indications of substantially reduced range of motion or tenderness in her musculoskeletal system. A.R. 15-16 (citing Exhibits 9F/3, 10; 13F/3). Importantly, the ALJ incorporated restrictions related to Plaintiff's carpal tunnel, including limitations in Plaintiff's use of her hands and wrists and therefore, additional specific limits associated with the wrist braces would simply be redundant and unnecessary, and any error the ALJ may have made by failing to specifically consider Plaintiff's use of the wrist braces would be harmless .

Upon review of the ALJ's decision, the Court is satisfied that the RFC determination is supported by substantial evidence. The Court will thus **AFFIRM** the ALJ's RFC determinations.

### B. Medical Opinions

Plaintiff also asserts that the ALJ erred by failing to properly weigh medical opinion evidence from a number of Plaintiff's doctors. Plaintiff largely argues that the ALJ should have afforded Plaintiff's doctors more weight and credibility because they are treating physicians. Pltf.'s Br., ECF No. 8 at 20-22. Plaintiff also argues that the ALJ should have, and in fact was

obligated to, recontact the physicians if he required clarification for vague medical opinions.

"An ALJ 'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.'" *Tedesco v. Commissioner Social Security*, 833 Fed.Appx. 957, 961 (3d Cir. 2020) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)); *see also Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (explaining that the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence") (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). "An ALJ may 'weigh the [conflicting] medical evidence and draw [her] own inferences.'" *Brunson v. Commissioner of Social Security*, 704 Fed.Appx. 56, 59 (3d Cir. 2017) (quoting *Brown v. Astrue*, 649 F.3d 193, 196-97 (3d Cir. 2011)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." *Burnett*, 220 F.3d at 122. "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, the ALJ found the state agency consultants' opinion "generally persuasive," but did not find the following opinions persuasive: Dr. Kaniz Khan Jaffery, Dr. Barbara Kelly, Dr. Juan Carlos Cornejo, and Angela Davis, APN. A.R. 16-17. For Dr. Jaffery, the ALJ found the conclusions that the claimant was unable to sit or stand long periods, could not lift objects, and could not engage in gainful employment "vague, as Dr. Jaffery did not specify how long a period the claimant could sit or stand, which does not lend support to the conclusions." A.R. 17. For Dr. Kelly, while the medical opinion indicated that Plaintiff would require oversight in any management of funds, the ALJ explained that "it does not explicitly indicate how the claimant would be mentally limited, which does not lend it support," and moreover, found that "the mental

status examination findings are inconsistent with such a need for oversight, as the claimant's memory and cognition generally remain intact." A.R. 17. For Dr. Cornejo, who opined that Plaintiff would have difficulty bending and turning her neck and back, would have difficulty with physically exerting activity, and would be able to stand for a reasonable amount of time with needed breaks, among other restrictions, the ALJ found that by using vague phrases such as "would have difficulty" and "for a reasonable amount of time," the opinion lacked specificity, which does not lend it support. The ALJ further noted that Dr. Cornejo's opinion "did not limit the claimant in vocational terms," and that "objective finding such as the claimant's range of motion remaining normal at times is not consistent with [Dr. Cornejo's] limitations." A.R. 17. Finally, for Angela Davis, APN, the ALJ explained that the mental status examination findings in the record were milder than the limitations described by Ms. Davis and that the treatment notes indicating Plaintiff's depression was being more controlled with medication were not consistent with Ms. Davis's statements, and thus the opinion was not persuasive. A.R. 17.

The Court finds that Plaintiff's argument that these medical opinions should be afforded controlling weight are not persuasive. Because Plaintiff's claim was filed *after* March 27, 2017, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Moreover, the ALJ set out the reason he rejected or afforded little weight to the medical opinions identified by Plaintiff in this appeal. As the Third Circuit noted in *Cotter v. Harris*, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice," and the ALJ here provided an explanation for each medical opinion. 650 F.2d at 482.

Finally, Plaintiff's argument that the ALJ was required to recontact physicians whose opinions he found vague is similarly unpersuasive.  The cases Plaintiff cites from this district to support this alleged obligation to recontact physicians are cases where the claim was filed before March 27, 2017, and thus before the law concerning the opinions of treating physicians changed. Moreover, the two cases note that the specific policy interpretation setting forth the obligation to recontact has been rescinded and is therefore not applicable to this case with a post March 27, 2017 filing date.  *See Dennis v. Comm'r of Soc. Sec.*, No. CV 19-18514 (RBK), 2020 WL 3989647, at *10 n.3 (D.N.J. July 15, 2020) (noting that "SSR 96–5p has been rescinded, but remains in effect for claims, such as this one, filed before March 27, 2017") (citing Rescission of Social Security Rulings 96–2p, 96–5p, and 6–3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017)); *Layton v. Comm'r of Soc. Sec.*, No. CV 19-9120 (RBK), 2020 WL 1616424, at *6 n.2 (D.N.J. Apr. 2, 2020) (same). Accordingly, the ALJ was not required to recontact Plaintiff's physicians.

Upon review of the ALJ's decision, the Court is satisfied that the ALJ's treatment of the various medical opinions in the Decision is supported by substantial evidence.  The Court will thus **AFFIRM** the ALJ's consideration of the physicians' opinions.

### C.  Hypotheticals posed to Vocational Expert

Finally, Plaintiff argues that the ALJ erred in not incorporating specific mental and cognitive limitations when asking the VE hypotheticals about potential work.  As noted above and discussed herein, the ALJ asked the VE about a hypothetical individual who "can perform simple, routine, and repetitive tasks; and make simple decisions."  A.R. 66-67.  However, Plaintiff contends that the ALJ should have included limitations concerning Plaintiff's restrictions in concentration, persistence, and pace when asking about the hypothetical individual.  Pltf.'s Br., at 27-30.

When discussing hypothetical questions presented to vocational experts, the Third Circuit has explained that "'[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'" *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). Moreover "[a] hypothetical question posed to a vocational expert 'must reflect *all* of a claimant's impairments.'" *Id.* (quoting *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987)) (emphasis added). Importantly, the Third Circuit has clarified that the ALJ is not required to submit every impairment alleged by a claimant to the vocational expert, and rather, "the hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Therefore, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Id.* (emphasis in original) (citing *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)); *see also Burns*, 312 F.3d at 123 (explaining that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence") (citing *Podedworny,* 745 F.2d at 218).

In the Decision, the ALJ found that Plaintiff has a moderate limitation in understanding, remembering, or applying information, as well as a moderate limitation in concentrating, persisting, or maintaining pace. A.R. 13-14. Concerning the latter limitation, the ALJ explained that "[m]ental status examination findings have at times shown that the claimant's attention and concentration remained intact [and] the record notes a good response to medication." A.R. 14

(citing Exhibits 10F/4; 15F/69; 15F/17).  Based on those findings, the ALJ concluded that there was support "for only moderate limitations to concentrating, persisting, or maintaining pace." A.R. 14.  The ALJ incorporated these restrictions and limitations in Plaintiff's RFC by limiting her to performing "simple, routine, and repetitive tasks and make simple decisions."  A.R. 14.

During the Hearing, the ALJ asked the VE a number of hypotheticals, and incorporated mental and cognitive limitations in those hypotheticals, specifically asking about a hypothetical individual who "can perform simple, routine, and repetitive tasks; and make simple decisions." A.R. 66-67.  Based on cases reviewed by the Third Circuit, this Court is satisfied that the hypothetical adequately and accurately conveyed Plaintiff's limitations concerning her moderate limitations in concentration, persistence or pace.  In *McDonald v. Astrue*, the Third Circuit found that a hypothetical that an individual was limited to "simple, routine tasks" adequately portrayed the plaintiff's limitations who only had "'moderate limitations with his ability to maintain concentration, persistence and pace.'"  293 F. App'x 941, 946 (3d Cir. 2008).  Similarly, in *Russo v. Astrue*, the Third Circuit explained that a hypothetical that asked the VE "'to assume that the individual could understand, remember, and carry out simple instructions, would have limited contact with the public and coworkers, and would not have a quota to fulfill'" accurately conveyed the plaintiff's limitations who had "moderate difficulties with concentration, persistence, or pace.'"[4]  421 F. App'x 184, 192 (3d Cir. 2011).

While Plaintiff relies heavily on the Third Circuit's decision in *Ramirez v. Barnhart*, that case involved a plaintiff who *often* suffered from deficiencies in concentration, persistence, or pace, whereas here, Plaintiff only suffers moderate limitations.  372 F.3d 546, 554 (3d Cir. 2004). Accordingly, this Court finds that this case more closely aligns with the circumstances in

---

[4] While the hypothetical posed to the VE in this case did not include language concerning Plaintiff's restriction concerning quotas, Plaintiff does not raise this specific limitation within the briefing.

*McDonald* and *Russo* and finds that the ALJ's decision was based on substantial evidence given the accuracy conveyed by the hypotheticals posed to the VE.  Thus, this Court will **AFFIRM** the hypotheticals the ALJ posed to the VE.

**V.      CONCLUSION**

For the foregoing reasons, the Commissioner's determination is **AFFIRMED**.

<u>*s/ Karen M. Williams*</u>
KAREN M. WILLIAMS
United States District Judge